# Exhibit 2

CJ-25-392
ogden



IN THE DISTRICT COURT OF OKLAHOMA COUNTY
STATE OF OKLAHOMA

| | |
|---|---|
| STACY D. SHELTON,<br>    Plaintiff,<br><br>v.<br><br>HEALTH CARE SERVICE<br>CORPORATION, a Foreign Mutual Legal<br>Reserve Company, dba BLUE CROSS AND<br>BLUE SHIELD OF OKLAHOMA,<br>    Defendants. | )<br>)<br>)<br>)  **CJ-2025-392**<br>)<br>)<br>)  FILED IN DISTRICT COURT<br>)  OKLAHOMA COUNTY<br>)<br>)  JAN 1 6 2025<br>)<br>)  RICK WARREN<br>   COURT CLERK<br>**PETITION**  42_____ |

Plaintiff, Stacy D. Shelton ("Plaintiff"), for her cause of action against Defendants, Blue Cross and Blue Shield of Oklahoma, and Health Care Service Corporation (collectively, "BCBSOK"), alleges and states as follows:

### Jurisdiction and Venue

1. Plaintiff is a resident of Cleveland County, Oklahoma.

2. Defendant Health Care Service Corporation operates under the common name Blue Cross Blue Shield of Oklahoma in the State of Oklahoma as an unincorporated division of Health Care Service Corporation, a mutual legal reserve company.

3. The Defendant, Health Care Service Corporation, dba BlueCross BlueShield of Oklahoma is a foreign for-profit business incorporated in the State of Illinois. BCBSOK is authorized to transact business within the State of Oklahoma and may be served with process through its service agent, Glen Mulready, Oklahoma Insurance Commissioner, 400 NE 50th Street, Oklahoma City, Oklahoma, 73105.

EXHIBIT 2

4. At all times material hereto, Plaintiff was insured under a Blue Cross Blue Shield of Oklahoma health insurance policy. The subject insurance policy was sold, issued, delivered and renewed in Oklahoma.

5. The facts and causes of action against BCBSOK arose out of the same transaction or occurrence: Plaintiff seeking treatment post-surgical care.

6. This Court therefore has jurisdiction over the parties and the subject matter of this action, and venue is proper under 12 O.S. §137.

### Facts

7. At all times relevant to this matter, Plaintiff was insured under a policy of health insurance issued by BCBSOK.

8. The applicable policy is identified as a Blue Advantage Gold PPO$^{SM}$ 102 ("Health Plan") and has an ID number of XXXXX7857 and group number of XXX09C.

9. The health plan was issued by BCBSOK.

10. The Health Plan is not subject to the Employee Retirement Income Security Act of 1974 ("ERISA"), and therefore, Defendants are not exempt from any state law causes of action alleged by Plaintiff.

11. In August 2023, Plaintiff had to have an emergency total hip revision surgery to remove a defective prothesis. During the extensive surgical removal of the prothesis, Plaintiff suffered a broken femur, pelvis, and sustained a pelvic wall breach. These injuries caused Plaintiff severe physical and emotional pain.

12. Following this surgery, Plaintiff spent a few months in a wheelchair, followed by a few months with a walker, and finally over 6 months utilizing a cane to help her walk.

13. Plaintiff was utilizing the cane to walk as late as September, 2024.

14. Plaintiff was ordered to attend physical therapy as a medical necessity due the severity of her surgery as post-operative care to regain mobility and alleviate her painful symptoms. Plaintiff attends physical therapy multiple times per week.

15. Plaintiff's physical therapy visits were directly related to her post-operative surgical care.

16. Plaintiff was notified that BCBSOK would only pay for twenty-five (25) physical therapy visits. Once Plaintiff reached twenty-five physical therapy visits, BCBSOK stopped paying.

17. In May, 2024, Plaintiff's medical providers attempted to get BCBSOK to approve the medically necessary physical therapy visits by filing out the BCBSOK Clinical Review forms.

18. Following BCBSOK's denial of Plaintiff's further treatment, Plaintiff was forced to reduce her physical therapy visits from three times per week to two times per week as she was required to pay for these visits out of pocket at $90.00 per visit due to BCBSOK's refusal to pay.

19. In September, 2024, Plaintiff sent correspondence including her physical therapy bills she paid out of pocket in an attempt to get BCBSOK to change their denial decision and reimburse her for the expenses she was paying out of pocket.

20. On October 9, 2024, BCBSOK sent correspondence stating:

> Please be aware that we have thoroughly reviewed multiple claims for services provided by Physical Therapy Central for you on multiple dates of service but must maintain our original decision. Based on all the information available it was determined that it was processed correctly.
>
> With the policy having a hard maximum on visits no review is required. The policy will only cover the amount listed and would not allow extra visits. Therefore, no further reimbursement can be made.

21. This October 9th correspondence does not specifically reference the policy language supporting BCBSOK's determination to deny Plaintiff's claims.

3

22. Plaintiff's policy does contain an "OUTPATIENT THERAPY SERVICES" limitation of twenty-

    five visits in the Schedule of Benefits:

    > **OUTPATIENT THERAPY SERVICES**
    > Maximum of 25 Outpatient visits for Physical Therapy, Occupational Therapy, Speech Therapy and Manipulative Therapy (combined) per Benefit Period*, except for "Services Related to Treatment of Autism and Autism Spectrum Disorders" as specified in this Certificate.
    > *Separate 25-visit maximums will apply to Outpatient Rehabilitation Care and Outpatient Habilitation Care.*

23. Plaintiff's policy contains the following definition of "THERAPY SERVICE" and "Physical

    Therapy":

    > **THERAPY SERVICE**
    > The following services and supplies ordered by a Physician or other Provider when used to treat and promote your recovery from an illness or injury, or that are provided in order for a person to attain, maintain or prevent deterioration of a skill or function never learned or acquired due to a disabling condition:
    >
    > - Physical Therapy – the treatment by physical means, hydrotherapy, heat or similar modalities, physical agents, bio-mechanical and neuro-physiological principles, and devices to relieve pain, to restore, attain or maintain maximum function, and to prevent disability or deterioration of a skill or function resulting from a disabling condition, disease, injury, or loss of body part.

24. As stated in the policy definition, Therapy Service and Physical Therapy do not mention

    or include surgery or post-operative surgical care.

25. Plaintiff's policy contains the following definition of "REHABILITATION CARE":

    > **REHABILITATION CARE**
    > Services, including devices, provided to help a person regain, maintain, or prevent deterioration of a skill or function that has been acquired but then lost or impaired due to illness, injury, or a disabling condition.

26. As stated in the policy definition, Rehabilitation Care does not mention or include surgery

    or post-operative surgical care.

27. The policy of insurance purchased and paid for by Plaintiff specifically provides coverage

    for "SURGICAL/MEDICAL SERVICES" which includes visits before and after surgery:

4

**SURGICAL/MEDICAL SERVICES**

We pay the scheduled amounts for the following Covered Services you receive from a Physician or other Provider.

- **Surgery**
  Benefits include visits before and after Surgery.

28. Plaintiff's policy contains the following definition of "SURGERY":

**SURGERY**
- The performance of generally accepted operative and other invasive procedures;
- The correction of fractures and dislocations; or
- Usual and related preoperative and postoperative care.

29. The claims made by Plaintiff which were denied by BCBSOK are "usual and related....postoperative care" and were determined to be medically necessary by her health care providers for follow up care related to her surgical procedures.

30. As a direct result of BCBSOK's decision and subsequent actions to deny Plaintiff's post-surgical services, Plaintiff has sustained damages.

## First Cause of Action – Breach of Contract

31. Plaintiff adopts and incorporates by reference paragraphs 1-30 of her Petition.

32. At all times, Plaintiff complied with the terms of the Health Plan required for coverage under the Terms and Conditions of the Health Plan.

33. Plaintiff properly submitted claims for benefits under the Health Plan.

34. BCBSOK owed Plaintiff specific obligations under the terms of the Health Plan.

35. BCBSOK is obligated to pay for medical treatment, operations, and other services that are medically necessary as specifically defined and covered under the terms of the Health Plan.

36. The post-surgical therapy and rehabilitation of Plaintiff is medically necessary.

37. Thus, BCBSOK was obligated under the Health Plan to pay for, subject to the terms of coverage amounts, the treatment for Plaintiff's postoperative and post-surgical care.

38. BCBSOK failed to cover the treatment recommended by Plaintiff's doctors, despite multiple appeals.

39. BCBSOK's letter dated October 9,2024, does not specifically identify which policy provision(s) in the Health Plan Contract BCBSOK relies upon for denying coverage.

40. The October 9th correspondence does not identify the contractual basis for denial of Plaintiff's claims.

41. The Health Plan requires that BCBSOK specifically identify in a "written notice" to Plaintiff the following information regarding the claims decision:

> If the claim is denied in whole or in part, you will receive a written notice from the Plan with the following information, if applicable:
> - The reasons for the determination;
> - A reference to the Benefit provisions on which the determination is based, or the Contractual or administrative basis or protocol for the determination;

42. BCBSOK failed to advise Plaintiff of what policy provisions they were relying upon in denying her claims.

43. BCBSOK has also improperly caused delays in the recommended medical treatment for Plaintiff by delaying claims decisions or arbitrarily denying claims and forcing Plaintiff to initiate appeals and pay for her postoperative care out of pocket.

44. BCBSOK continues to wrongfully deny Plaintiff's claim based on the incorrect and position that her surgical postoperative care is subject to a twenty-five-visit limitation.

45. Plaintiff's Health Plan language concerning Physical Therapy is technically ambiguous and capable of more than one reasonable interpretation as it does not specifically mention or apply to postoperative surgical care.

46. The Health Plan contract does not specifically provide that postoperative surgical therapy is subject to the twenty-five-visit limitation.

47. The Health Plan SURGERY and SURGICAL/MEDICAL SERVICES policy language that unequivocally provides coverage for "Usual and related preoperative and postoperative care."

   **SURGICAL/MEDICAL SERVICES**
   We pay the scheduled amounts for the following Covered Services you receive from a Physician or other Provider.
   - **Surgery**
     Benefits include visits before and after Surgery.

48. The coverage portion of Plaintiff's Health Plan involving Surgical/Medical Services and the definition of Surgery do not specifically apply to outpatient care.

49. Under the SURGICAL/MEDICAL SERVICES covered services portion of the Health Plan, Outpatient Medical Services specifically excludes care related to surgery:

   - **Outpatient Medical Services**
     Outpatient Medical Care that is not related to Surgery, pregnancy or Mental Health and Substance Use Disorder, except as specified.

50. Plaintiff had a reasonable expectation of coverage under her Health Plan in that she relied upon her medical doctors to make the best and sound decisions for her care and that her Health Plan would provide coverage for her post-surgical care.

7

51. Plaintiff had a reasonable expectation of coverage under her Health Plan in that she relied upon her Health Plan to provide coverage according to the policy language which created a reasonable expectation of coverage for her postoperative surgical care.

52. In the alternative, Plaintiff is entitled to reformation of the insurance contract to provide coverage for her postoperative surgical care.

53. The acts and omissions of BCBSOK in the investigation, evaluation, and decision of Plaintiff's claims were unreasonable, improper, and in violation of the terms and requirements of the Health Plan language.

54. BCBSOK breached the contract with Plaintiff by failing to pay for covered claims, forcing Plaintiff to initiate appeals without providing a reasonable review and consideration of information and evidence submitted in support of each appeal, and otherwise failing to comply with its obligations under the terms of the health plan.

55. Plaintiff has sustained actual damages as a direct and proximate result of BCBSOK's breach of contract in an amount exceeding $75,000.00 including attorneys fees, costs, and interest.

## Second Cause of Action-Bad Faith

56. Plaintiff adopts and incorporates by referenced paragraphs 1-55 of her Petition.

57. BCBSOK, as an insurer, owes Plaintiff, as an insured, a duty to deal fairly and act in good faith under Oklahoma law. Plaintiff is covered under the terms of the Health Plan.

58. The acts and omissions of BCBSOK in the investigation, evaluation, handling, delay and decision on Plaintiff's claims were unreasonable, improper, contrary to the Health Plan

policy language, and constitute bad faith for which extra-contractual damages are claimed.

59. Plaintiff timely and properly submitted claims for insurance benefits to BCBSOK, as her health insurer. BCBSOK arbitrarily delayed claims decisions and improperly denied claims that should have been covered under the Health Plan.

60. BCBSOK failed to consider that the therapy Plaintiff was receiving was not "Outpatient" therapy but was instead "postoperative" surgical care.

61. The Health Plan does not exclude or place limits on postoperative surgical care.

62. The Health Plan definitions of "Therapy Service" and "Physical Therapy" and "Rehabilitation Care" do not mention postoperative surgical care.

63. BCBSOK arbitrarily denied Plaintiff's claim by classifying her postoperative surgical care as routine Outpatient Physical Therapy.

64. BCBSOK failed to properly investigate, consider, and apply their own Health Plan language to Plaintiff's known care and unreasonably failed to give equal consideration to their insured in denying her claim.

65. BCBSOK failed to investigate or consider that Plaintiff's postoperative surgical care should be approved under the language of the policy.

66. Plaintiff had a reasonable expectation of coverage under her Health Plan in that she relied upon her medical doctors to make the best and sound decisions for her care and that her Health Plan as written and provided to her would provide coverage according to the Health Plan policy language.

67. Plaintiff had a reasonable expectation of coverage under her Health Plan in that she relied upon her Health Plan to provide coverage according to the policy language which created a reasonable expectation of coverage for post-surgical care.

68. Plaintiff's Health Plan language concerning "Therapy Service" and "Physical Therapy" and "Rehabilitation Care" is technically ambiguous as it does not specifically relate to or mention surgical or postoperative care.

69. BCBSOK breached the implied covenant of good faith and fair dealing in the handling of Plaintiff's claims, and as a matter of routine claim practice in handling similar claims, by:

   a. failing and refusing payment and other policy benefits for Plaintiff's post-surgical and postoperative care at a time when BCBSOK knew that she was entitled to those benefits under the language of the policy;
   b. failing to properly investigate, consider, and apply the Health Plan policy language to afford coverage for Plaintiff's claims;
   c. failing to obtain additional information both in connection with the original refusals and following the receipt of additional information;
   d. withholding payment of the benefits on behalf of Plaintiff knowing that her claims for those benefits were valid based on her medical condition at the time of requesting coverage;
   e. refusing to honor Plaintiff's claims for reasons contrary to the express provisions of the policy and/or Oklahoma law;
   f. refusing to honor Plaintiff's claim by knowingly misconstruing and misapplying provisions of the policy to find her claim for benefits was subject to a limitation of twenty-five visits in the Schedule of Benefits;
   g. Failing to identify the specific policy provisions BCBSOK was relying upon in denying Plaintiff's claims as required by the Health Plan;
   h. failing to adopt and implement reasonable standards for the prompt investigation and reasonable handling of claims arising under these policies, to include Plaintiff's claim where it was clear this was postoperative surgical care;
   i. forcing Plaintiff to initiate appeals without providing reasonable and adequate consideration of the information submitted by or on Plaintiff's behalf as part of said appeals;
   j. improperly and arbitrarily denying coverage for medical care and treatments that are covered by the plain language of the policy;
   k. failing to properly evaluate any investigation that was performed;

    l. knowingly construing the policy wording to restrict coverage in a manner different than BCBSOK knows this policy is designed, written and marketed to promise much broader coverage under this policy language;
    m. refusing to consider coverage objectively in the best interest of their insured rather than the interest of only the insurance company;
    n. intentionally failing and refusing to follow the known law of policy construction, including, but not limited to, resolving any contractual ambiguities in favor of their insured;
    o. unreasonably delaying the payment of policy benefits, including delays and refusals to pay with the specific intent that it interferes with and prevent necessary medical care for Plaintiff in order to reduce the applicable policy benefits that would otherwise be payable for such care; and,
    p. forcing Plaintiff, pursuant to BCBSOK's standard claims practice, to retain counsel in order to secure benefits BCBSOK knew were payable;

all in violation of the covenant of good faith and fair dealing and resulting in financial benefit to the Defendant.

70. BCBSOK recklessly disregarded its duty to deal fairly and act in good faith, as its conduct was unreasonable and there was a high probability that the denial of Plaintiff's claims would cause serious harm to Plaintiff by delaying, restricting, or otherwise denying necessary medical treatment and causing Plaintiff to have to pay out of pocket for treatment.

71. As a direct result of BCBSOK's breach of contract and breach of the implied covenant of good faith and fair dealing, Plaintiff has suffered the loss of policy benefits, loss of further appropriate medical care and the policy benefit applicable to such needed care, physical, emotional and developmental injury, emotional distress, embarrassment, frustration, duress, and other consequential damages

72. BCBSOK's acts and omissions in violation of the implied covenant of good faith and fair dealing were in reckless disregard for the rights of others and/or were done intentionally and with malice and therefore Plaintiff is entitled to recover punitive damages.

73. As a direct and proximate result of BCBSOK's bad faith, Plaintiff has suffered damages in excess of $75,000.00.

74. The conduct of BCBSOK in the handling of Plaintiff's claim was intentional, willful, wanton, and showed reckless disregard for the rights of Plaintiff for which punitive damages are claimed.

75. BCBSOK has established a pattern and practice of improper claims handling and arbitrary claims denials involving postoperative surgical care and physical therapy such that BCBSOK recklessly disregards its duty of good faith and fair dealing to insureds in Oklahoma as a matter of common business practice.

76. BCBSOK' claims handling practices are intentional and committed with malice toward its insureds as Plaintiff's claims for coverage in this matter were clearly post-surgical care follow-up and there were no expressed or implied limitations in the policy for post-surgical care.

77. Plaintiff is entitled to an award of punitive damages as determined by a jury pursuant to 23 O.S. §9.1.

WHEREFORE, premises considered, Plaintiff, Stacy D. Shelton, prays for judgment in her favor and against Defendants, Blue Cross and Blue Shield of Oklahoma and Health Care Service Corporation, and requests this Court award Plaintiff damages for Defendants' breach of contract, bad faith, punitive damages, and/or reformation of the insurance policy to provide coverage, together with attorney's fees, pre and post judgment interest, court costs, and such other and further relief as the Court deems just and equitable. Plaintiff's damages exceed $75,000.00 exclusive of attorney's fees and costs in a total amount to be determined by the jury.

Respectfully submitted,

_/s/ Jason Waddell_

Jason Waddell, OBA No. 30761
Jason Waddell, PLLC
222 NW 13th Street
Oklahoma City, OK 73103
Telephone:    (405) 232-5291
Facsimile:    (405) 708-7871
Jason@JasonWaddellLaw.com
**ATTORNEY FOR PLAINTIFF**

**ATTORNEY'S LIEN CLAIMED**
**JURY TRIAL DEMANDED**